IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ADAM G. BARNETT and CARLI E. MCCONAUGHY,<br><br>      Plaintiffs,<br><br>  vs.<br><br><br>EDWARD PAUL CASS, ET AL.,<br><br>      Defendants. | CIV. NO. 20-00440 JMS-RT<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO STATE COURT, ECF NO. 12 |

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO STATE COURT, ECF NO. 12**

**I.  BACKGROUND**

As alleged in the Complaint in this action, on October 22, 2018, Plaintiffs Adam Barnett and Carli McConaughy embarked on a helicopter tour of Oahu operated by Defendant Novictor Helicopters ("Novictor") and piloted by Defendant Edward Cass.  ECF No. 12-3 at PageID ## 124-25.  Approximately 20 minutes into the flight, Cass passed out.  *Id.* at PageID # 125.  McConaughy, who was sitting directly behind the cockpit, noticed that Cass had lost consciousness and seized the controls to prevent the helicopter from entering freefall.  *Id.*  She was able to slow the helicopter, but it crash-landed into a sandbar in Kaneohe Bay

in approximately three feet of water. *Id.* Plaintiffs allege that they suffered "serious physical" and psychological injuries as a result. *Id.* at PageID # 126.

On September 23, 2020, Plaintiffs brought suit in the Circuit Court of the First Circuit, State of Hawaii, against Cass and Novictor, as well as the owner of the helicopter, Higgins Leasing, and several Doe Defendants. *Id.* at PageID # 122. In their Complaint, Plaintiffs advance eight state law claims—seven for "gross negligence/negligence" and one for common carrier liability. *Id.* at PageID ## 126-38. Several of the claims are based on allegations that Defendants "knew or should have known of Cass's medical condition that caused him to lose consciousness mid-flight" and should have prevented him from flying. *Id.* at PageID ## 126-131. The remainder of the claims also concern aviation safety, including negligent employment of and failure to train Cass, failure to implement proper and reasonable flight safety rules and policies, failure to equip the helicopter with safety equipment, and failure to supply a safe and airworthy aircraft. *Id.* at PageID ## 132-136.

On October 1, 2020, Defendants removed the case to federal court based on federal question jurisdiction, asserting that Plaintiffs' state law claims are completely preempted by the Federal Aviation Act ("FAA") and corresponding Federal Aviation Regulations ("FARs"). ECF No. 1 at PageID # 2 (citing 28 U.S.C. §§ 1331, 1441, and 1446). Defendants point to the holding of *Montalvo v.*

2

*Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), that the FAA and FARs "demonstrate an intent to occupy exclusively the entire field of aviation safety and carry out Congress' intent to preempt all state law in this field."  ECF No. 1 at PageID # 7 (quoting *Montalvo*, 508 F.3d at 471).  And with respect to Plaintiffs' claims regarding Cass' medical fitness to serve as a pilot, Defendants rely on *Ventress v. Japan Airlines*, 747 F.3d 716 (9th Cir. 2014), which specifically held that an "inquiry into the medical fitness [of a pilot] intrudes upon the federally occupied field of pilot safety and qualifications that Congress has reserved for the agency." ECF No. 1 at PageID # 7 (quoting *Ventress*, 747 F.3d at 722).

On November 12, 2020, Plaintiffs filed a Motion to Remand to state court, ECF No. 12.  Plaintiffs argue that although the FAA and FARs may establish the applicable standard of care, they do not preempt state law personal injury remedies.  *Id.* at PageID ## 112-13; ECF No. 27 at PageID # 270. Defendants filed their Opposition on January 16, 2021, ECF No. 23, and Plaintiffs filed their Reply on January 25, ECF No. 27.  The court requested supplemental briefing to determine precisely which FARs are applicable to intrastate commercial air tours, including the one at issue in this case.  ECF No. 30.  The parties submitted their responses on February 11, 2021, ECF Nos. 31 & 33.  This matter is decided without a hearing pursuant to Local Rule 7.1(c).

## II. <u>DISCUSSION</u>

**A.    Standard**

A plaintiff may file a motion to remand in order to challenge the removal of an action from state to federal court.  Removal is proper so long as the plaintiff could have brought the action in federal court in the first instance; that is, so long as federal-question jurisdiction exists.  *See* 28 U.S.C. § 1441.  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

But under the "artful pleading rule" a plaintiff may not defeat removal by omitting necessary federal questions from their complaint.  *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010).  Rather, "[a] state-created cause of action can be deemed to arise under federal law," regardless of how it is plead, "(1) where federal law *completely* preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question."  *ARCO Env't Remediation, LLC v. Dept of Health & Env't Quality of the State of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted) (emphasis added).

4

Courts strictly construe § 1441 against removal and resolve any

doubts in favor of remanding the case to state court. *Durham v. Lockheed Martin*

*Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus v. Miles, Inc.*, 980 F.2d

564, 566 (9th Cir. 1992) (per curiam)). The party seeking to remove the case bears

the burden of establishing that removal is proper. *Geographic Expeditions, Inc. v.*

*Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).

**B.    Analysis**

Defendants argue that federal jurisdiction is proper because Plaintiffs'

state law claims are completely preempted by the FAA and FARs. Because the

FAA does not expressly preempt state law claims, "preemption, if any, must be

implied."[1] *Ventress*, 747 F.3d at 720. In *Montalvo*, the Ninth Circuit "delineated

the preemptive scope of the FAA," holding that "the FAA, together with the

[FARs] promulgated by the Federal Aviation Administration . . . 'occupies the

entire field of aviation safety' and that Congress 'clearly indicated its intent to be

the sole regulator'" of this field. *Ventress*, 747 F.3d at 721 (quoting *Montalvo*, 508

---

[1] "Implied preemption comes in two forms: conflict preemption and field preemption." *Ventress*, 747 F.3d at 720. Conflict preemption applies where "compliance with both federal and state regulations is a physical impossibility" and where "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Field preemption applies where "a framework of regulation [is] so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (internal quotation and markings omitted). Here, Defendants make their argument under the doctrine of field preemption.

F.3d at 473-74); *see also Bernstein v. Virgin Am., Inc.*, 2021 WL 686281, at *7

(9th Cir. Feb. 23, 2021) ("[O]ur case law makes clear that field preemption

generally applies to . . . the field of *aviation safety*.") (emphasis in original).

Applying that rule, *Ventress* determined that the Federal Aviation Administration

has "promulgated detailed FARs regarding the issuance of medical certificates for

[pilots]," including "FARs governing medical standards for mental, neurological,

and general medical conditions." *Ventress*, 747 F.3d at 721-22.  Thus, the court

concluded, the FAA and FARs preempted the plaintiff's state law retaliation and

constructive termination claims, which required "the factfinder to pass on

questions of pilot qualifications and medical fitness." *Id.* at 722.

But although federal law "occupies the field" of aviation safety, "the

scope of field preemption extends only to the standard of care." *Gilstrap v. United

Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013).  Indeed, *Ventress* explains that

the FAA's savings clause, 49 U.S.C. § 40120(c),[2] establishes that "even where

federal law preempts state law standards of aviation safety . . . 'traditional state and

territorial law remedies continue to exist for violation of *those standards*.'"  747

F.3d at 723 n.7 (emphasis in original) (quoting *Abdullah v. Am. Airlines, Inc.*, 181

F.3d 363, 375 (3d. Cir. 1999)); *see also Gilstrap*, 709 F.3d at 1007 (explaining that

---

[2] 49 U.S.C. § 40120(c) states that "[a] remedy under this part is in addition to any other remedies provided by law."

6

in pervasively regulated areas, the FAA and FARs "preempt any different or higher standard of care that may exist under [state] tort law" but that plaintiffs "may still rely on [state] tort law to prove the other elements of [their] claims—breach, causation, damages, and remedies"); *Joseph v. Berkeley Grp., LLC*, 823 F. Appx. 472, 473 (9th Cir. 2020) (mem.) ("The [FAA's] savings clause allows state tort law to provide additional remedies where a plaintiff alleges a violation of the safety standards set by federal regulations."); *see also Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 731 (9th Cir. 2016) (holding that while state remedies are available for breaches of standards of care set by the FAA, the statute wholly preempts "claims brought under state statutes prescribing substantive standards of care").[3]

This rule is appropriate because the FAA does not create a private cause of action for personal injury claims.  Thus, if the FAA was instead construed to wholly preempt state law personal injury claims, individuals harmed in aircraft crashes and other flight-related incidents would be left without any remedy.  *See Brown v. City & Cnty. of Honolulu*, 2015 WL 1564961, at *5 (D. Haw. 2015) ("[T]he Federal Aviation Act does not create a federal cause of action for personal

---

[3]  To be clear, this preemption analysis applies only in areas that are pervasively regulated under the FAA and FARs.  But "'[i]n areas without pervasive regulations or other grounds for preemption, the state *standard of care* remains applicable.'"  *Gilstrap*, 709 F.3d at 1005 n.15 (emphasis in original) (quoting *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009)).

injury suits and 'consequently, the complete preemption doctrine is inapplicable here and does not provide a basis for removal.'" (brackets omitted)) (quoting *Webb v. Desert Bermuda Dev. Co.*, 518 Fed. Appx. 521, 522 (9th Cir. 2013)).[4]

Against this backdrop, the court applies a "two-part framework for evaluating field preemption under the FAA." *Gilstrap*, 709 F.3d at 1006. First, the court asks "whether the particular area of aviation commerce and safety implicated by the lawsuit is governed by 'pervasive federal regulations.'" *Id.* (brackets omitted) (quoting *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc*., 555 F.3d 806, 811 (9th Cir. 2009)). "If so, then any applicable state standards of care are preempted." *Id.* But "'[l]ocal law still governs the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies.'" *Id.* (quoting *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 125 (3d Cir. 2010)).

Here, the FAA and FARs preempt any applicable state law standards of care but do not otherwise preempt Plaintiffs' state law personal injury claims. First, FAA standards of care clearly apply because each claim involves aviation safety standards and the FARs "occupy the field of aviation safety standards."

---

[4] In *Ventress*, the plaintiff's state law claims were preempted because he did not "identify—much less allege a violation of—any FAR or other federal aviation safety standard. As such, even if state remedies hypothetically remain[ed] available to him under the FAA's savings clause . . . [he] failed to allege a cognizable legal claim under any applicable federal standard." 747 F.3d at 723 n.7.

*Joseph*, 823 F. App'x at 473 (citing *Ventress*, 747 F.3d at 721); *see also Bernstein*, 2021 WL 686281, at *7 ("'[F]ederal law preempts state law claims that encroach upon, supplement, or alter the *federally occupied field of aviation safety*.'") (emphasis in original) (quoting *Ventress*, 747 F.3d at 722-23).  Plaintiffs' Counts 1 through 4 concern Defendant Cass' medical qualifications to fly.  *See* ECF No. 12-3 at PageID ## 126-132.  The medical qualifications for pilots of commercial air tours, such as those operated by Defendants, are comprehensively regulated by FARs Parts 61 and 67.  14 C.F.R. §§ 61.1 et seq., 67.1 et seq.[5]  Part 61 requires all commercial air pilots to obtain a medical certificate in order to fly.  *See, e.g.*, 14 C.F.R. § 61.3.  Part 67 specifies the requirements for medical certificates as well as the criteria and procedures that the Federal Aviation Administration uses to determine whether a pilot is medically fit to fly aircraft.  *See, e.g.*, 14 C.F.R. §§ 67.101-67.115.  And pursuant to § 67.401, a pilot's certificate specifies any conditions that pilot must comply with in order to fly, given their particular medical profile.  *Ventress* unequivocally held that this regulatory scheme establishes the standard of care applicable to claims, like Plaintiffs', that implicate the medical fitness of a pilot.  *Ventress*, 747 F.3d at 721.

---

[5]  These regulations are applicable to intrastate commercial air tours through the requirements set forth in FAR Part 91, which "prescribes the rules governing the operation of aircraft within the United States, including waters within 3 nautical miles of the U.S. coast," 14 C.F.R. § 91.1(a), and specifically Part 91.147, which governs passenger carrying flights for compensation or hire. 14 C.F.R. § 91.147.

Likewise, the FAA and FARs control the standard of care applicable to Plaintiffs' remaining claims.  Count 5 alleges that Defendants Novictor and Higgins were negligent in their hiring, training, and supervision of Cass.  ECF No. 12-3 at PageID # 132-33.  Count 6 alleges that Defendants failed to "adequately implement proper and reasonable flight safety rules and policies."  ECF No. 12-3 at PageID ## 133-34.  Count 7 alleges that Defendants "failed to equip the helicopter with adequate safety equipment," and Count 8 alleges a common carrier liability claim for failure to "supply[] a safe and airworthy helicopter."  *Id.* at PageID ## 135-36.

All of these claims stem from the "federally occupied field of aviation safety."  *Ventress*, 747 F.3d at 721-22 (explaining that the FAA and FARs "occup[y] the *entire* field of aviation safety") (emphasis added).  As to Count 5, FARs Parts 135 and 136 set out comprehensive training and supervision requirements that operators of commercial air tours in Hawaii—through Part 91.147—are required to implement with respect to all of their pilots.  *See, e.g.*, 14 C.F.R. §§ 135.1, 135.321-135-351, 136.1.  And pursuant to its Letter of Authorization from the Federal Aviation Administration, Novictor was required to comply with these requirements, including with respect to Defendant Cass.  ECF No. 31 at PageID # 279; ECF No. 36-1.  As to Count 6, the safety requirements, rules, and policies for operators of helicopter commercial air tours are

10

comprehensively set forth in FARs Parts 91 and 135, *see, e.g.*, 14 C.F.R. §§
91.1023-91.1025, 135.21-135.23, as well as FAR Part 136 Appendix A, which
contains "special operating rules for air tour operators in the state of Hawaii," 14
C.F.R. § 136, App. A.  Finally, the FAA pervasively governs helicopter
airworthiness, thereby preempting any state law standard of care applicable to
Counts 7 and 8.  Operators like Novictor may only fly FAA registered aircraft that
the Federal Aviation Administration has certified as being "airworthy."  14 CFR §§
91.7 and 135.25.  And pursuant to FAR Parts 43.11 and 91.417, operators are
required to keep inspection and maintenance records regarding their fleet of
helicopters and their engines. 14 C.F.R. §§ 43.11; 43 App. D;  91.417.  All of these
requirements apply to Novictor directly through its FAA Letter of Authorization.
ECF No. 31 at PageID # 280; ECF No. 36-1.[6]

   Plaintiffs' state law claims are preempted by the FAA and FARs
solely as to the applicable standard of care.  But whether Defendants breached
those standards of care and what remedies may be appropriate remain questions to
be answered under state law principles.  To be clear, although Plaintiffs will be
permitted to pursue their claims in state court, they will *not* be allowed to substitute

---

[6] As to all counts, the court has provided *some* examples of relevant FARs in order to
demonstrate that Plaintiffs' claims arise from a field that is fully occupied by federal regulation.
But these examples should not be construed as an exhaustive list of all FARs potentially relevant
to this case.  Indeed, the court has not comprehensively reviewed all existing FARs; additional
regulations may ultimately be relevant to determining the standards of care applicable to
Plaintiffs' claims.

a state law standard of care for the FAA standard of care applicable to any of their

claims.  Plaintiffs acknowledge as much in their briefing, stating that they "seek

relief under state law remedies and apply other state law standards in negligence

but apply the FAA standard of care."  ECF No. 27 at PageID # 270 ("Plaintiffs are

not asking the court to determine if the FAA standards of care for pilot medical

fitness and qualifications are preempted by the FARs.  Plaintiffs apply the *Gilstrap*

court's determination that state law remedies are not preempted even if state law

standards of care are preempted by pervasive federal regulation.").  And while it is

not clear from the face of their Complaint that Plaintiffs are alleging a violation of

a federal standard of care, this omission does not render the Complaint defective

under the liberal notice pleading standard applicable in state court.  *See Carpenter*

*v. PNC Bank, N.A.*, 386 F. Supp. 3d 1339, 1346 (D. Haw. 2019) (explaining that

under Hawaii Rules of Civil Procedure—unlike under the Federal Rules as

explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—a complaint

need only "set forth 'a short and plain statement of the claim showing that the

pleader is entitled to relief'" and that "it is not necessary to plead legal theories

with precision") (quoting *Bank of America, N.A. v. Reyes-Toledo*, 143 Haw. 249,

258-59, 428 P.3d 761, 770-71 (2018)).

       Nevertheless, because all of Plaintiffs' claims arise out of the

"federally occupied" field of aviation safety, Plaintiffs will be required to tether

each of their allegations to a federal standard of care in state court.  As an example, in their first cause of action Plaintiffs allege that Defendant Cass was negligent because he "failed to assess his health before piloting the subject helicopter" and "failed to alert pertinent authorities of his condition after his health declined during flight."  ECF No. 12-3 at PageID # 126.  It is not clear whether these alleged failures correspond to a standard of care established by the FARs.  But because federal law preempts state law standards of care, in order to prevail on their claims Plaintiffs *must* provide the federal standard of care applicable to each claim before relying on state law negligence principles to prove the remaining elements.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Remand is GRANTED.  The action is remanded to the Circuit Court for the First Circuit, State of Hawaii and the clerk of court is directed to close the case file.

///

///

///

///

///

///

///

Plaintiffs may pursue their claims in state court, but they *shall not* substitute the applicable FAA standards of care with any alternative state law standards of care.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, February 25, 2021



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Barnett v. Cass*, Civ. No. 20-00440 JMS-RT, Order Granting Plaintiffs' Motion to Remand, ECF No. 12